# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT FLEMING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. 4:15-cv-00075 |
| THE MOMENTA GROUP LLC d/b/a | § | |
| MOMENTUM FITNESS SOLUTIONS | § | |
| and GRANT MOYER, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S PRETRIAL BRIEF

Plaintiff Robert Fleming ("Plaintiff" or "Mr. Fleming") files this Pretrial

Brief concerning his claims against The Momenta Group LLC d/b/a Momentum

Fitness Solutions ("Momentum") and Grant Moyer (collectively "Defendants").

## SUMMARY

1.     On November 30, 2014, Mr. Fleming instituted a complaint with the

Texas Workforce Commission ("TWC") asserting that Momentum had

misclassified him as "exempt" from overtime under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq*., and thus owed him $7,991.45 in overtime pay.

On December 10, 2014, the TWC informed Mr. Fleming in writing that it had

received his claim, and had notified Momentum of the claim.


EXHIBIT
9

2.     On December 15, 2014, Momentum fired Mr. Fleming.  Momentum's President and owner, Grant Moyer, personally fired Mr. Fleming.  Mr. Moyer admitted that Mr. Fleming's complaint to the TWC seeking overtime pay under the FLSA was the reason for his termination.  As such, Momentum's termination of Mr. Fleming violated the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), and Mr. Fleming brings this suit to obtain redress for that violation from Momentum and Mr. Moyer.

3.     In addition, after Mr. Fleming refused to dismiss his FLSA claim in this case, Momentum and Mr. Moyer further retaliated by filing frivolous counter-claims against Mr. Fleming and even tried to sue his wife.  Mr. Fleming seeks relief that that retaliatory conduct as well.

## THE PARTIES, COVERAGE, AND JURISDICTION

4.     Plaintiff Robert Fleming is a natural person residing in the confines of the Southern District of Texas, Houston, Division, within the State of Texas.  Mr. Fleming has standing to file this lawsuit, in that he was an employee of Momentum's, and was engaged in commerce or in the production of goods for commerce under the FLSA.  *See* 29 U.S.C. §§ 206-07.

5.     Defendant Momentum, is a domestic limited liability company that operates its business for profit in the United States of America, and has its corporate headquarters in Texas.

6.     Momentum engaged in commerce or the production of goods for commerce at all material times, including in 2014 and 2015.  Momentum continues at this time to engage in commerce or the production of goods for commerce.

7.     Momentum had annual revenues in excess of $500,000 at all material times, and has had annual revenues in excess of $500,000 in 2014 and 2015.

8.     Momentum has, at all material times, acted, directly or indirectly, in the interest of an employer with respect to Fleming.

9.     Momentum has, at all material times, been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10.     Momentum has, at all materials times, been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11.     Momentum has, at all material times, been an enterprise engaged in commerce or in the production of goods for commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Momentum has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and Momentum has had and continues to have annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

12. Even if Momentum was not covered by the FLSA's overtime provisions, it would not deprive the court of jurisdiction, or provide Momentum a defense, because the lack of individual or enterprise coverage for an overtime claim does not defeat a retaliatory discharge claim under 29 U.S.C. 215(a)(3). The Fifth Circuit has held, "[u]nlike the wage and hour provisions of Sections 6 and 7 of the [FLSA], which apply only to an 'employee ... engaged in commerce or in the production of goods for commerce,' the protections of [the retaliatory provision] apply, without qualification, to 'any employee.' The prohibitions of [the retaliatory provision] are similarly unlimited, for they are directed to 'any person.' Thus the clear and unambiguous language of the statute refutes the ... view that either the employee or his employer must be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked." *Wirtz v. Ross Packaging Comp.*, 367 F.2d 549, 550-51 (5th Cir. 1966).

13. Under the FLSA, an "employer" includes individuals with "managerial responsibilities" and "substantial control of the terms and conditions of the work of [the] employees." *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). As the sole owner, and active President of Momentum, who personally fired Mr. Fleming, Mr. Moyer satisfies this definition of "employer." Alternatively, in any event, as set forth

above, the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), applies to any "person," and so Mr. Fleming, as a "person," is subject to liability under that section even if he does not qualify as an FLSA "employer. *See Wirtz*, 367 F.2d at 550-51.

14. The Court has personal jurisdiction over Momentum and Mr. Moyer based on both general and specific jurisdiction. During all times relevant to this lawsuit Momentum has continuously done business in the State of Texas, and it continues to do business in the State of Texas.

15. The Court has subject matter jurisdiction over this case based on federal question jurisdiction because Plaintiff bases his claims in this case on federal law, specifically the FLSA.

16. Momentum and Mr. Moyer have been sued in the Southern District of Texas, Houston Division, under the FLSA before. *See Morrissey v. The Momenta Group LLC d/b/a Momentum Fitness Solutions*, Case No. 4:13-cv-02543 (S.D. Tex. Aug. 29, 2013). That case settled after mediation in late August 2014, not long after Mr. Fleming initially raised his complaints about not being paid overtime in violation of the FLSA.

## FACTUAL BACKGROUND

17. Momentum sells and services fitness equipment. It sells and services fitness equipment that is manufactured by several of the fitness industry's leading

commercial equipment manufacturers.  Its clients include hotels, corporations, multi-family properties, health clubs, colleges and universities, police and fire departments, and physical therapy and rehabilitation facilities.  It is a mid-sized private company that has less than 50 employees.

18.    Momentum hired Mr. Fleming as an employee in February 2014, into a position with the title of Director of Service.   During his employment, Momentum's service revenues increased approximately 35% as compared to the same time period in 2013.   Momentum paid Mr. Fleming a flat salary of $40,000.00 per year. Although Mr. Fleming often worked more than 40 hours in a workweek, he received no extra pay for overtime compensation.

19.    Mr. Fleming does not have a college degree.  Mr. Fleming never supervised two or more employees at Momentum.  Mr. Fleming spent the vast majority of his working time at Momentum personally performing repair and maintenance service calls on exercise equipment in the field, thus producing revenue for Momentum in its core line of business of servicing exercising equipment.[1]   For these and other reasons, Mr. Fleming reasonably believed in good faith that he did not qualify as an "exempt" employee under the FLSA.

---

[1]   This is relevant because some courts hold that employees working in areas that produce revenue that their employer generates as part of its core business are not eligible for the administrative exemption based on what is referred to as the production/administrative dichotomy. *See Owens v. CEVA Logistics/TNT*, No. H–11–2237, 2012 WL 6691115, at *8-10 (S.D. Tex. Dec. 21, 2012) (denying logistics company's motion for summary judgment in an FLSA misclassification case that turned on the application of the administrative exemption

20.    During his employment, Mr. Fleming let Momentum know that he did not believe that he qualified as an "exempt" employee under the FLSA.   For example, in July 2014, Mr. Fleming told Grant Moyer, the President and Owner of Momentum, that he believe he was entitled to overtime compensation.  Mr. Moyer disagreed, claiming that Mr. Fleming's status as a "director" was sufficient to justify exempt status.

21.    In mid-November 2014, Mr. Fleming also told Momentum's outside counsel, Keenya R. Harrold, of Cozen O'Connor, P.C., in a face-to face meeting with her at Momentum's office in her capacity as Momentum's lawyer, that he was misclassified as exempt.  Mr. Fleming showed Ms. Harrold Department of Labor "Fact Sheet #17A: Exemption for Executive, Administrative, Professional, Computer & Outside Sales Employees Under the Fair Labor Standards Act (FLSA)." *See* http://www.dol.gov/whd/overtime/fs17a_overview.pdf.  Mr. Fleming went over it with Ms. Harrold and explained that he did not fit within any of the

---

in part because of the production/administrative distinction, and rejecting argument that customer service work is exempt work, when such customer service work is intertwined with the service provided); *see also Allemani v. Pratt (Corrugated Logistics) LLC*, Civil Action No. 1:12–CV–00100–RWS, 2014 WL 2574536, at *8-11 (N.D. Ga. June 6, 2014) (finding dispatchers working for a logistics company were not exempt under the administrative exemption as a matter of law, and applying the production/administrative dichotomy in holding that the plaintiffs' primary duty of dispatching loads was not administrative work); *Miller v. Team Go Figure, L.L.P.*, Civil Action No. 3:13–cv–1509–O, 2014 WL 1909354, at *12 (N.D. Tex. May 13, 2014) (relying on same dichotomy in denying employer's motion for summary judgment based on the administrative exemption).

exemptions set out in the Fact Sheet. Nevertheless, Mr. Fleming's status was not changed, and no persuasive rationale was ever given to Mr. Fleming for his classification as exempt under the FLSA.

22.    On November 30, 2014, Mr. Fleming filed a claim for unpaid overtime with the TWC under the Texas Payday Act, TEX. LAB. CODE ANN. § 61.001 *et seq.* Mr. Fleming made the claim reasonably and in good faith. The claim specifically challenged Momentum's classification of him as an exempt worker under the FLSA – indeed, the entire claim was predicated on the assertion that Momentum had violated the FLSA by classifying him as exempt and refusing to pay him overtime on that basis.

23.    On Wednesday, December 10, 2014, the TWC informed Mr. Fleming in writing that it had received his claim, and had notified Momentum of the claim.

24.    On the following Monday, December 15, 2014, Mr. Moyer, fired Mr. Fleming, and explicitly told him that the reason he was firing him was because he "did not appreciate [Mr. Fleming] playing both sides." Mr. Fleming asked Mr. Moyer what that meant, and Mr. Moyer said that he had received notice of Mr. Fleming's claim with the TWC requesting overtime pay. A week later, Momentum sent Mr. Fleming a long letter filled with false and inaccurate statements that Mr. Fleming vigorously disputes, and attempting to shift its articulated grounds for firing him.

25.     Mr. Fleming filed this FLSA retaliation case on January 12, 2015 (Doc. No. 1).  On July 23, 2015, the lawyer for Momentum and Mr. Moyer sent Mr. Fleming's lawyer an e-mail threatening to sue Mr. Fleming and his wife if Mr. Fleming did not drop this case.   When Mr. Fleming did not drop this case, Momentum and Mr. Moyer followed through with their retaliatory threats, and, on July 25, 2015, filed knowingly frivolous counter-claims against Mr. Fleming, and sought to sue his wife too (Doc. Nos. 14 and 15).

26.     For example – and this is just one of many examples – Momentum and Mr. Moyer counter-claimed against Mr. Fleming for allegedly violating a customer non-solicitation agreement that Mr. Fleming did not sign until two business days before he was fired, and during those two business days Defendants did not provide Mr. Fleming any confidential information (Doc. No. 15 at ¶ 24-26). It is obvious under Texas law that such a customer non-solicitation agreement is not enforceable.   *See, e.g., Digital Generation, Inc. v. Boring*, NO. 3:12-CV-00329-L, 2012 WL 1413386, at *10 (N.D. Tex. Apr. 24, 2012) (finding noncompete unenforceable where employer did not prove that it gave employee confidential information after he signed the noncompetition agreement).[2] Furthermore, Mr. Fleming did not violate the unenforceable customer non-

---

[2]   Non-solicitation of customer agreements are subject to the same analysis as covenants not to compete. *See Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App.–Amarillo 1995, no writ)  (stating that "other than the moniker assigned it, nothing truly differentiates the [non-solicitation] promise at bar from a covenant not to compete").

solicitation agreement anyway, and Defendants have failed to allege, much less prove, that they have lost any customers because of Mr. Fleming's supposed violation of the unenforceable customer non-solicitation agreement. The other counterclaims are equally as frivolous and without merit.

27. Finally, that Defendants' frivolous counterclaims are retaliatory is plain from their timing: even though Defendants base the counterclaims largely on allegations they made in a letter to Mr. Fleming in December 2014, they did not actually bring the counter-claims until after Mr. Fleming sued them under the FLSA, and then refused to drop his suit. *Nesselrotte v. Allegheny Energy, Inc.*, No. 06–CV–1390, 2009 WL 703395, at *14 (W.D. Pa. Mar. 16, 2009) (denying summary judgment on plaintiff's retaliation claim because, *inter alia*, the temporal proximity of the defendant's decision to sue plaintiff's husband's company raised an issue of fact).

28. Mr. Fleming amended his lawsuit to assert that the counterclaims and threatened claims against he and his wife were themselves actionable retaliation under the FLSA (Doc. Nos. 17, 24).

29. The Court dismissed Defendants' counterclaims and thus the counterclaims are not pending in this case (Doc. No. 34).

30. Furthermore, Defendants never filed an answer to Mr. Fleming's amended lawsuit, in which he asserted that Defendants' counterclaims and

threatened claims against he and his wife were themselves actionable retaliation under the FLSA. Defendants belatedly sought leave twice to file such an answer, but the Court denied Defendants' motions each time (Doc. Nos. 40, 44). As such, as Defendants admitted, under Federal Rule of Civil Procedure 8, Mr. Fleming's claim that Defendants retaliated against him in violation of the FLSA by bringing counterclaims and threatening claims against he and his wife is deemed admitted by Defendants. *See* Doc. No. 42 at pp. 1, 3.

## FLSA CLAIMS FOR RETALIATION

### A.    Legal Standards

31.    Under the FLSA, employers are generally required to pay employees time and one-half times their regular rate for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1). As the Fifth Circuit has stated: "The Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (citing 29 U.S.C. § 207(a)). But, there are some exemptions to this rule. Under the law, those exemptions are narrowly construed, and the burden of proof to establish them lies with the employer. *See Vela v. Houston*, 276 F.3d 659, 666 (5th Cir. 2001). The three most common exemptions to the overtime pay requirement are the executive, professional, and administrative exemptions. Mr. Fleming reasonably did not believe he qualified to be exempt from overtime under the

FLSA, and he let Momentum know that, by informing Mr. Moyer and Ms. Harrold, and then by instituting his complaint with the TWC. *See supra.*

32.    When employees, such as Mr. Fleming, make complaints about alleged violations of the FLSA, they are protected from employer retaliation by law.  Specifically, the FLSA's anti-retaliation provision provides that it is unlawful "for any person" to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

33.    To prevail on a claim for FLSA retaliatory discharge, absent direct evidence, a plaintiff must make a *prima facie* showing of (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). "If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision." *Id.* The burden then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Id.*

34.    A plaintiff may also prove a retaliation claim through direct evidence, as an alternative to this burden-shifting scheme.   "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact

-12-

(*i.e.*, unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993); *see also Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, No. 13–30020, 2013 WL 5997945, at *3 (5th Cir. Nov. 13, 2013) (unpublished) (same) (copy attached as Ex. 3). "Unlike a case in which the plaintiff has presented only circumstantial evidence of retaliatory animus, [the court does] not apply the *McDonnell Douglas* burden-shifting framework to determine whether [plaintiff's] direct evidence presents a factual issue for a jury." *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003). "[T]estimony of an employer's statements evincing retaliatory animus are regarded as direct evidence because no further inference to determine retaliatory intent is required." *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp.2d 822, 845 (E.D. Tex. 2009).

## B. Pre-suit FLSA Retaliation By Defendants

35. As set forth above, on November 30, 2014, Mr. Fleming made a protected complaint related to the FLSA, in that he, *inter alia*, instituted a proceeding with the TWC in which he sought compensation for unpaid overtime that he reasonably and in good faith believed he was due based on the FLSA, and he specifically challenged Momentum's classification of him as exempt under the FLSA. By doing so, Mr. Fleming instituted a complaint with the TWC that was

related to the FLSA. As such, his complaint to the TWC constituted protected activity under 29 U.S.C. § 215(a)(3), meaning that Momentum and Mr. Moyer were legally prohibited from retaliating against him for the complaint. *See, e.g., Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999) (complaint filed with state agency with authority over minimum wage and maximum hours laws, rather than the federal Department of Labor, was still protected under 29 U.S.C. § 215(a)(3)); *Randolph v. ADT Security Services, Inc.*, 701 F. Supp. 2d 740, 746 (D. Md. 2010) (same). This is true – *i.e.*, that the anti-retaliation provision applied – whether or not Mr. Fleming ultimately prevailed on his TWC complaint (he ultimately did not). *See, e.g., Darveau v. Detecon, Inc.*, 515 F.3d 334, 338 (4th Cir. 2008) (employee's complaint regarding not being paid overtime was protected from retaliation by 29 U.S.C. § 215(a)(3) even though ultimately the courts rejected it); *Sapperstein*, 188 F.3d at 857 ("Sapperstein filed a complaint or instituted proceedings by reporting to the appropriate authorities conduct which was clearly under or related to the minimum wage and maximum hours laws. There is no reason to doubt his good faith. He was therefore protected from retaliation whether or not the conduct he reported was a violation of those laws.").[3]

---

[3] Although Mr. Fleming's complaint to the TWC was objectively and subjectively reasonable and in good faith, there is a compelling argument that it was protected from retaliation by 29 U.S.C. § 215(a)(3) even if it were not. *See Randolph v. ADT Sec. Servs., Inc.*, No. 09–cv–1790, 2011 WL 3476898, at *4-6 (D. Md. Aug. 8, 2011) (holding that plaintiffs' FLSA related complaints filed with state agency over overtime were entitled to absolute protection, even if they were unreasonably made, based on plain language of 29 U.S.C. § 215(a)(3) and

36.     On December 15, 2014, Mr. Moyer fired Mr. Fleming, and admitted that he fired him because of his protected complaint. *See supra.* Mr. Moyer's given reason for firing Mr. Fleming is direct evidence that Momentum and Mr. Moyer violated the FLSA's anti-retaliation section. *See, e.g., Rubinstein v. Administrators of Tulane Educational Fund,* 218 F.3d 392, 402 (5th Cir. 2000) (finding that a dean's testimony that he denied a professor a pay raise because the professor filed a discrimination suit against the university "could be no more direct on the issue of retaliation"); *Rao v. Texas Parks and Wildlife Dept.,* Civ. Action No. 4:13–cv–0726, 2014 WL 1846102, at *3 (S.D. Tex. May 8, 2014) (finding similar comment constituted direct evidence of retaliation in a Title VII case).

37.     Even aside from the direct evidence, the close temporal proximity between Mr. Fleming's complaint and his termination, and Momentum's shifting explanations for his termination, demonstrate that Momentum's and Mr. Moyer's false *post hoc* articulated rationale for Mr. Fleming's termination is a mere pretext for retaliation. *See, e.g., Cantu v. Vitol, Inc.,* Civil Action No. H-09-0576, 2011

---

an analogy to Title VII's anti-retaliation clause covering participation, which provides absolute protection from retaliation for EEOC filings, even if the filings are made unreasonably or in bad faith); *see also Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005-07 (5th Cir. 1969) (holding that EEOC complaints are protected from retaliation under Title VII's participation clause even if they are unreasonable and made in bad faith); *Booth v. Pasco County, Fla.,* 829 F. Supp. 2d 1180, 1201 (M.D. Fla. 2011) (following *Pettway,* and holding that "[f]or the above reasons, this Court declines to read a good faith and reasonableness requirement into the participation clause.").

WL 486289, at *10 (S.D. Tex. Feb. 7, 2011) (Rosenthal, J.) (noting that "the Fifth Circuit has found temporal proximity of up to four months sufficient to show a causal link.") (citing *Stroud v. BMC Software, Inc.*, No. 07–20779, 2008 WL 2325639 (5th Cir. June 6, 2008) (finding that a three-week lapse between protected activity and adverse employment action was sufficient to show a causal link); *Richard v. Cingular Wireless LLC*, 233 Fed. Appx. 334, 338 (5th Cir. Apr. 13, 2007) (concluding that two-and-one-half months is short enough to support an inference of a causal link); *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (finding that a period of less than sixty days was sufficiently close to establish a causal link for a *prima facie* case of retaliation); *Ware v. CLECO Power LLC*, 90 Fed. Appx. 705, 708 (5th Cir. Jan. 21, 2004) (unpublished) (finding a fifteen-day period sufficient to support an inference of causation); *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (observing that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes" (internal citations omitted)); *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."); *see also Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408 (5th Cir. 2007) (shifting explanations can be evidence of pretext); *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002) (same).

38.     Defendants have argued, without competent evidence, that Mr. Moyer did not know of Mr. Flemings' complaint to the TWC until the morning of the day on which Mr. Moyer later fired him (Defendants' Motion for Summary Judgment, Docket No. 26 at 4). This argument fails because, among other reasons: (a) that Mr. Moyer allegedly received Mr. Fleming's TWC complaint the morning of the same day he later fired Mr. Fleming on actually supports Mr. Fleming's claim of retaliatory discharge, rather than defeating it; and (b) in any event, Mr. Moyer's aforementioned alleged statement to Mr. Fleming when he fired him constitutes direct evidence of retaliation.

39.     Defendants also argue that Mr. Moyer and Momentum had been unhappy with Mr. Fleming for months (Docket No. 26 at 3-4). But, even assuming for the sake of argument that this is true, this point fails to account for the fact that despite their alleged unhappiness with Mr. Fleming, the Defendants never formally disciplined him, and only fired him upon receiving his FLSA-protected TWC complaint. Given this context – and the alleged direct evidence comment from Mr. Moyer – a reasonable jury could easily conclude that even if Defendants were unhappy with Mr. Fleming for months, they only decided to fire Mr. Fleming after receiving (and thus because of) his FLSA-protected TWC complaint. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) (close timing combined with other suspicious evidence can be sufficient evidence to

support a retaliation claim). Thus, summary judgment is not proper on Mr. Fleming's FLSA retaliatory discharge claim. *See, e.g.*, *Maynor v. Dow Chem. Co.*, 671 F. Supp.2d 902, 927 (S.D. Tex. 2009) (denying employer's summary judgment motion in an FLSA retaliation case because there were fact questions for the jury to decide).

## C.  Post-suit FLSA Retaliation By Defendants

40.  Momentum and Mr. Moyer also retaliated against Mr. Fleming after Mr. Fleming filed this FLSA retaliation case (the filing of which is itself protected activity under the FLSA). On Thursday, July 23, 2015, some seven months after suit was filed, the lawyer for Momentum and Mr. Moyer sent Mr. Fleming's lawyer an e-mail threatening to sue Mr. Fleming and his wife if Mr. Fleming did not drop this case. When Mr. Fleming did not drop this case, Momentum and Mr. Moyer followed through with their retaliatory threats two days later, and, on Saturday, July 25, 2015, filed meritless counter-claims against Mr. Fleming, and sought to sue his wife too (Docket Nos. 14 and 15).

41.  Former employees are protected from retaliation under the FLSA. *See Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972) (noting that former employees require such protection because they often need references from past employers, they may face retaliation from new employers who learn they have challenged the labor practices of previous

employers, and they sometimes must return to past employers for a variety of reasons, putting them once more at risk of retaliation); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008) (holding that FLSA's anti-retaliation provision applies to former employees and perceptively observing that "[t]he more unfortunate anomaly would be if an employee's underlying FLSA claim could be brought after he quit, but the employee's protection from retaliation ended when the employee stepped beyond the employer's doorstep.").

42.     Such counter-claims are actionable as retaliation.  *See, e.g., Spencer v. International Shoppes, Inc.*, 902 F. Supp. 2d 287, 299 (E.D.N.Y. 2012) (employer could potentially be held liable for suing the plaintiff in state court after the plaintiff sued the employer in federal court under Title VII); *Penberg v. HealthBridge Management*, 823 F. Supp. 2d 166, 192-93 (E.D.N.Y. 2011) (defendant's counterclaim for breach of fiduciary duty and its decision to pursue sanctions for destruction of evidence contained on plaintiff's computer could constitute actionable retaliation for the employee's discrimination suit, and stating that "the timing of defendant's counterclaim and related demands on plaintiff ... raised a triable issue of fact regarding whether defendant added its counterclaim with retaliatory intent."); *Illiano v. Mineola Union Free School Dist.*, 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008) (denying motion to dismiss claim based on retaliatory defamation suit where employer threatened to sue plaintiff if she sought

-19-

to vindicate her rights); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (holding in FLSA case that bad faith or groundless legal proceedings are actionable retaliation).

43.     These holdings are consistent with the U.S. Supreme Court's holding in 2006, in which the court held that employer actions short of "ultimate employment actions" can be actionable as retaliation under Title VII if the employer's actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

44.     Defendants have asserted that counterclaims cannot be actionable as retaliation based on *Hernandez v. Crawford Building Material Co.*, 321 F.3d 528 (5th Cir. 2003).   In *Hernandez*, the U.S. Court of Appeals for the Fifth Circuit held that counterclaims could not be actionable as retaliation under Title VII because they were not "ultimate employment actions."   *Id.* at 532-33.   But *Hernandez* was decided before the U.S. Supreme Court's decision 2006 in *Burlington Northern,* and the Fifth Circuit has recognized that, in light of *Burlington Northern*, *Hernandez* is no longer good law on the adverse employment action standard for retaliation claims.   *See Peace v. Harvey*, 207 Fed. Appx. 366, 368 (5th Cir. 2006) ("Regarding the second element, this circuit formerly held only "ultimate employment decisions", such as "hiring, granting leave, discharging, promoting,

and compensation", were actionable "adverse employment actions". *See, e.g.,
Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir.), *cert.
denied*, 540 U.S. 817, 124 S.Ct. 82, 157 L.Ed.2d 34 (2003). *Burlington Northern*,
however, altered the "adverse employment action" standard for retaliation claims,
holding retaliation actionable if "a reasonable employee would have found the
challenged action materially adverse, which in this context means it well might
have dissuaded a reasonable worker from making or supporting a charge of
discrimination." 126 S. Ct. at 2415 (internal quotations and citations omitted).").
*See also Mohamed v. Sanofi–Aventis Pharmaceuticals*, No. 06–CV–1504, 2009
WL 4975260, at \*25 (S.D.N.Y. Dec. 22, 2009) ("In the wake of *Burlington
Northern*, there is now a 'substantial question' as to the validity of precedent
holding that a post-termination lawsuit or counterclaim may not be an adverse
employment action.").). Accordingly, as the Fifth Circuit itself has observed,
*Crawford* is not controlling. *See also Obester v. Lucas Assocs., Inc.*, No. 08–CV–
03491–MHB–AJB, 2010 WL 8292401, at \*70-72 (N.D. Ga. Aug. 2, 2010) (noting
that post-*Burlington Northern*, the "Fifth Circuit has recognized that *Hernandez* is
no longer good law on the adverse employment action standard for retaliation
claims and holding that "if a counterclaim has a retaliatory motive and lacks a
reasonable basis, then under the *Burlington Northern* standard, the filing of that

counterclaim may be a materially adverse employment action for the purposes of establishing a Title VII retaliation claim."), *adopted*, (N.D. Ga. Sept. 7, 2010)).

45.     Finally,     that     Defendants'     meritless     (and     frankly     frivolous) counterclaims – which were ultimately dismissed by the Court before trial – are retaliatory is evident from their timing:    even though Defendants base the counterclaims largely on allegations they made in a letter to Mr. Fleming in December 2014, they did not actually bring the counter-claims until after Mr. Fleming sued them under the FLSA, and then refused to drop his suit.  *See, e.g.*, *Nesselrotte v. Allegheny Energy, Inc.*, No. 06–CV–1390, 2009 WL 703395, at *14 (W.D. Pa. Mar. 16, 2009) (denying summary judgment on plaintiff's ADEA retaliation claim because, *inter alia*, the temporal proximity of the defendant's decision to sue plaintiff's husband's company raised an issue of fact).

46.     Mr. Fleming amended his lawsuit to assert that the counterclaims and threatened claims against he and his wife were themselves actionable retaliation under the FLSA (Doc. Nos. 17, 24).

47.     The Court dismissed Defendants' counterclaims and thus the counterclaims are not pending in this case (Doc. No. 34).

48.     Furthermore, Defendants never filed an answer to Mr. Fleming's amended lawsuit, in which he asserted that Defendants' counterclaims and threatened claims against he and his wife were themselves actionable retaliation

under the FLSA. Defendants belatedly sought leave twice to file such an answer, but the Court denied Defendants' motions each time (Doc. Nos. 40, 44). As such, as Defendants admitted, under Federal Rule of Civil Procedure 8, Mr. Fleming's claim that Defendants retaliated against him in violation of the FLSA by bringing counterclaims and threatening claims against he and his wife is deemed admitted by Defendants. *See* Doc. No. 42 at pp. 1, 3.

**D.     Damages**

49.     Based on Momentum's and Mr. Moyer's violations of the FLSA's anti-retaliation provision, Mr. Fleming is entitled to back-pay and liquidated damages (a doubling of the back-pay award). *See Little v. Technical Specialty Products LLC*, NO. 4:11-CV-717, 2013 WL 5755363, at *5 (E.D. Tex. Oct 23, 2013) (awarding liquidated damages to the plaintiff in an FLSA retaliation case). Compensatory damages and reinstatement or front-pay are also permitted for a retaliation claim under the FLSA. *See, e.g., Little v. Technical Specialty Products, LLC*, 940 F. Supp. 2d 460, 479 (E.D. Tex. 2013) (finding that the FLSA's anti-retaliation provision allows for an award of compensatory damages for emotional distress and also permits an award of reinstatement or front-pay where it is appropriate).

50.     Concerning the liquidated damages issue, a Court may grant an award of liquidated damages (double the back-pay award) in FLSA retaliation cases when

it may be appropriate to effectuate the purposes of Section 215(a)(3) (the FLSA's anti-retaliation provision). *See Moore v. Appliance Direct, Inc.*, 708 F.3d 1233 (11th Cir. 2013); *Braswell v. City of El Dorado*, 187 F.3d 954 (8th Cir. 1999); *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir. 1988); *Little v. Technical Specialty Products LLC,* NO. 4:11-CV-717, 2013 WL 5755363, at *5 (E.D. Tex. Oct. 23, 2013) (awarding liquidated damages to the plaintiff in an FLSA retaliation case); *York v. City of Wichita Falls, Texas*, 763 F. Supp. 876 (N.D. Tex. 1990).

51.     Concerning the reinstatement versus front pay point, "[f]ront pay refers to future lost earnings." *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied). Generally, reinstatement is the preferred equitable remedy for a discriminatory or retaliatory discharge. *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 2002). However, if reinstatement is not feasible, front pay will be awarded if it is consistent with the remedial purposes of the law. *Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992); *Junaid v. McHugh*, No. 2:11–CV00226, 2013 WL 321567, at *1 (S.D. Tex. January 28, 2013).

52.     "[R]einstatement is not preferred over front pay when there is no vacancy in the desired position." *Mitchell v. Sisters of Charity of Incarnate Word*, 924 F. Supp. 793 (S.D. Tex. 1996) (quoting *Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir. 1985)). In other words, if reinstatement would require

-24-

displacing or bumping an innocent employee from their job, then it is considered to be infeasible, and front-pay may be awarded instead of reinstatement. *See Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995).

53.    Reinstatement is also not feasible in some cases due to the high level of animosity between the parties in this case. *See, e.g., Junaid*, 2013 WL 321567, at *1 (collecting cases which demonstrate that reinstatement is not feasible when there is hostility between the parties).

54.    Front pay is an equitable issue for the Court. *See Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 892 (S.D. Tex. 2009) (citing Davis, 979 S.W.2d at 45). *See also Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803 (W.D. Tex. 2006) ("It is clear from legislative history, however, that front pay is an equitable remedy, and equitable remedies are awarded by the court.") (citing *Julian*, 314 F.3d at 729) (holding front pay is an equitable issue for the judge to determine); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998) (same); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 817 (5th Cir. 1990) (equitable issue)).

55.    Calculations of front-pay cannot be totally accurate because they are prospective and necessarily speculative in nature. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *Deloach,* 897 F.2d at 822; *Burns v. Texas City Refining, Inc.*, 890 F.2d 747, 753 n. 4 (5th Cir. 1989). "The courts must

employ intelligent guesswork to arrive at the best answer." *Deloach*, 897 F.2d at 822.

56.     In determining when the front-pay period ends, the Court generally considers the length of prior employment, the permanency of the position held, the nature of the work, the age and physical condition of the employee, possible consolidation of jobs, and other nondiscriminatory factors that could validly affect the possible post-discharge employment relationship. *Reneau*, 945 F.2d at 871.

57.     The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ." *See* 29 U.S.C. § 216(b); *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n. 25 (5th Cir. 2006) (affirming attorney's fees award in FLSA case of over $100,000.00). Mr. Fleming seeks such reasonable fees.

58.     One final point: By not answering, Defendants have admitted liability on Mr. Fleming's claim that Defendants threatened and actual attempted counterclaims were in violation of the FLSA's anti-retaliation provision. Defendants admit this (Doc. No. 42 at pp. 1, 3). As such, the only issue for the jury to decide on this claim is whether to award Mr. Fleming compensatory damages for emotional harm and the like, and, if so, the amount of such damages.

Respectfully submitted,

OBERTI SULLIVAN LLP

By:   s/ Mark J. Oberti
      Mark J. Oberti
      State Bar No. 00789951
      S.D. Texas No. 17918
      723 Main Street, Suite 340
      Houston, TX 77002
      (713) 401-3555 – Telephone
      (713) 401-3547 – Facsimile
      mark@osattorneys.com – Email

      ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
S.D. Texas No. 24524
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the counsel of record listed below by the Southern District of Texas ECF method or by certified mail, return receipt requested on the 22nd day of April 2016.

     Derrick D. King
     Attorney at Law
     P.O. Box 5526
     Katy, TX 77491

             s/ Mark J. Oberti
             Mark J. Oberti